IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


MARK BROWN,

    Plaintiff,

  vs.          Civil Action 2:08-CV-849
                Magistrate Judge King
CITY OF UPPER ARLINGTON,

    Defendant.


<u>OPINION AND ORDER</u>

   Plaintiff, a homeowner residing in Upper Arlington, Ohio, seeks to enjoin defendant, the City of Upper Arlington ("the City"), from removing a tree growing on the City's property abutting plaintiff's property.  With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on three pending motions: *Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* ("*Motion for Preliminary Injunction*"), Doc. No. 4; *Defendant City of Upper Arlington's Motion to Dismiss and Memorandum in Opposition to Plaintiff Mark Brown's Motion for Preliminary Injunction* ("*Motion to Dismiss*"), Doc. No. 11; and *Plaintiff's Motion to Supplement the Record* ("*Motion to Supplement*"), Doc. No. 16.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

  **A.  The Tree and the City's Decision to Remove the Tree**

   Plaintiff is a homeowner residing at 4388 Castleton Road West in Upper Arlington, Ohio.  *Verified Complaint* ("*Complaint*"), ¶¶ 1-2, 4.  The City owns a right-of-way that abuts plaintiff's property ("the right-of-way").  *Id*. at ¶ 2; Exhibit 1, attached to *Complaint*.

Approximately 40 years ago, a sweet gum tree was planted ("the Tree") on the right-of-way. *Complaint*, ¶¶ 1, 10-12.

On April 25, 2008, the City notified the resident at 4400 Castleton Road West, Upper Arlington, of its intent to remove the Tree because the Tree was "decayed/dying." *Id.* at ¶ 10; Exhibit 1. "[Q]ualified professionals" would remove the Tree at no cost to residents. Exhibit 1, attached to the *Complaint*. The City further advised that it planned "to plant a replacement tree in late fall." *Id.* Plaintiff received notice of the City's plans. *Complaint*, ¶ 10.

Plaintiff challenged the City's decision, arguing that the Tree was healthy, and asked for a hearing on the issue. *Complaint*, ¶ 13; Exhibit A, attached to *Motion to Dismiss*. In response, the City placed the issue on the June 3, 2008, agenda of the City Tree Commission of the City of Upper Arlington ("Tree Commission").[1]

---

[1]The Tree Commission consists of seven members who are residents of Upper Arlington and who are appointed by the mayor, subject to the approval of the city council. *See Codified Ordinances of Upper Arlington, Ohio* § 158.03(A), (B) ("*City Ordinances*"). The Tree Commission is charged with certain responsibilities, including the following:

(A)     To study the problems and determine the needs of the City of Upper Arlington, Ohio relative to a municipal tree care and tree planting program, and to make such recommendations from time to time to the City Council as to desirable legislation concerning the tree program and activities of the municipality.

        *        *        *        *

(D)     To hold regular and special meetings at which the subject of trees insofar as it relates to the municipality may be discussed by the members of the Commission, officers and personnel of the municipality and its several divisions, and all others interested in the tree program.

(E)     The Commission, when requested by City Council or the City Manager, shall consider, investigate, make findings, report and recommend upon any special matter or question coming within the scope of its work.

2

*Complaint*, ¶ 13; Exhibit B, attached to *Motion to Dismiss*.  The City encouraged plaintiff to provide documentation from a qualified professional to support his appeal.  Exhibit B.

**B.    Tree Commission Meeting on June 3, 2008**

Plaintiff attended the June 3, 2008, Tree Commission meeting, at which Parks and Forestry Superintendent and certified arborist Steve Cothrel ("Mr. Cothrel") stated that, although the Tree appears from the street to be healthy, it is nevertheless "deteriorating." Exhibits A and G;[2] *Complaint*, ¶ 14.  In particular, according to Mr. Cothrel, the Tree "has a large canker (several feet in length) on the trunk that has killed 35% to 40% on the cambium[3] around the trunk." *Id*.  Mr. Cothrel framed the issue regarding the tree as follows: "The question is not will this tree die soon, but will the tree fall over in the near future."  *Id*.  Mr. Cothrel opined that, in the interest of public safety, the City should remove the Tree, which is located near a school and next to a sidewalk.  *Id*.

Plaintiff advised the Tree Commission that he had, three years previously, replaced the sidewalk adjacent to the Tree.  *Complaint*, ¶ 20.  Plaintiff further stated that a certified arborist, who had examined the Tree at plaintiff's request, concluded that the Tree was

---

*Id*. at § 158.02(A), (D) and (E).

[2]Unless otherwise indicated, the lettered exhibits from here forward refer to the exhibits offered by the City and admitted without objection during the evidentiary hearing on September 24, 2008 ("evidentiary hearing"). *See Courtroom Minutes*, Doc. No. 12.

[3]"Cambium is a formative tree layer that produces new cells."  Kimberly P. Verruso, *Casenote: Earth Island Institute v. United States Forest Service: Cutting Down on Logging Proposals - A Successful Challenge*, 17 VILL. ENVTL. L.J. 237, 240 n.29 (2006).

structurally sound.  Exhibit G.  The Tree Commission agreed to
continue the meeting to permit plaintiff to submit the report of his
arborist.  *Id*.

Plaintiff thereafter forwarded to Mr. Cothrel the May 30, 2008,
report of Chris Ahlum ("Mr. Ahlum") of Ahlum & Arbor regarding the
viability of the Tree.  Exhibits H and I.

> On May 21, 2008, I inspected the Sweetgum Tree between the
> street and sidewalk that you were concerned about.  The
> Sweetgum tree has a wound on the northeast portion of the
> trunk of the tree.  The tree shows good signs of growth and
> has no dieback throughout the canopy.  It is my opinion that
> the Sweetgum tree is structurally stable at this time.  It
> should be monitored and kept disease and insect free to
> prolong the life of the Tree.

Exhibit I.

### C. Tree Commission Meeting of August 5, 2008 and the Decision to Remove the Tree

At its August 5, 2008, meeting, the Tree Commission acknowledged
receipt of Mr. Ahlum's letter regarding the stability of the Tree.
Exhibit J.  Nevertheless, Mr. Cothrel "stated that the City is liable
for the tree and there is little evidence that the canker will heal."
*Id*.  The Tree Commission unanimously agreed to the removal of the Tree
and to the planting of a replacement tree at the City's expense.  *Id*.
*See also Complaint*, ¶ 27.

On August 7, 2008, the City advised plaintiff that the Tree
Commission had denied his appeal, Exhibit 2, attached to *Complaint*,
and notified plaintiff that the Tree "will be removed sometime later
this summer."  *Id*.  The City further advised that a replacement tree
would be planted and that plaintiff could contact Mr. Cothrel to
discuss options in that regard.  *Id*.

4

Plaintiff and his neighbor, Michael Knilans ("Mr. Knilans"), responded to the City's decision on August 15, 2008. Exhibit L. They criticized the City's "implicit attack on Mr. Ahlum's professionalism and competence" and disagreed with the City's decision to remove the Tree. *Id*.

**D.    The Instant Litigation**

On September 2, 2008, plaintiff filed the instant action in the Court of Common Pleas, Franklin County, Ohio. *Complaint*. Plaintiff alleges that the City's proposed removal of the Tree violates plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and "contradicts" *City Ordinance* § 907.04(A). *Id*. at ¶¶ 30-35.[4] Plaintiff seeks "prospective, declaratory and injunctive relief" and payment of his costs and attorney's fees. *Id*. On September 3, 2008, the state court entered an order restraining and enjoining the City "from cutting down, removing, destroying, or otherwise tampering with the sweet gum tree that is the subject of this case" pending a hearing. Exhibit C, attached to *Petition for Removal by Defendants Seneca County Sheriff's Office and Unknown Law Enforcement Officers* ("*Petition for Removal*"),[5] Doc. No. 2.

The City removed the action to this Court on September 10, 2008, pursuant to 28 U.S.C. §§ 1441 and 1446. *Petition for Removal*, p. 2.

---

[4]In his response to the City's *Motion to Dismiss,* plaintiff clarifies that he intends to assert federal claims based on a denial of substantive due process and a denial of equal protection. *Plaintiff's Response to Defendant's Motion to Dismiss and Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction,* at p. 4, Doc. No. 15.

[5]The City's *Petition for Removal* obviously mistakenly referred to defendants in another, unrelated litigation.

The parties subsequently stipulated to the jurisdiction of the magistrate judge and the case was referred to the undersigned for disposition. *See Stipulation of the Parties to Consent to Magistrate Jurisdiction*, Doc. No. 8; *Order*, Doc. No. 9. The Court set a date for an evidentiary hearing on the *Motion for Preliminary Injunction*. *Order*, Doc. No. 10. On the day before the evidentiary hearing, the City filed its *Motion to Dismiss* in response to the *Motion for Preliminary Injunction*. *See Motion to Dismiss*.

On September 24, 2008, the Court held an evidentiary hearing on the *Motion for Preliminary Injunction*. *Courtroom Minutes*, Doc. No. 12. Both parties were present and represented by counsel. *Id*. At the conclusion of the evidentiary hearing, the Court observed that the temporary restraining order issued by the state court had expired. The Court instructed the City to notify the Court and plaintiff if the City intends to remove the Tree prior to the Court's resolution of this matter.

Following the evidentiary hearing, the parties fully briefed the *Motion to Dismiss* and *Motion to Supplement*. *See* Doc. Nos. 15-19. These matters are now ripe for resolution.

## II. *MOTION TO SUPPLEMENT*

### A. Background

On October 7, 2008, plaintiff filed the *Motion to Supplement*, seeking to supplement the record with a report ("Joint Report") signed by David H. Snyder ("Mr. Snyder") and T. Davis Sydnor ("Dr. Sydnor"). *Motion to Supplement*. Plaintiff characterizes these individuals as

experts in the field of arboriculture. *Id.* at 1. Mr. Snyder

identifies himself in the Joint Report as a "Consulting Arborist."

Exhibit A, attached to *Motion to Supplement*. Dr. Sydnor has a Ph.D.

in Plant Physiology and Horticultural Science and is a professor at

The Ohio State University School of Environment and Natural Resources;

he is also the author of several journal articles. Exhibit B,

attached to *Motion to Supplement*.

According to plaintiff, Mr. Snyder and Dr. Sydnor conducted a

resistograph test[6] on the Tree "by examining its inner core density and

have found it to be healthy and structurally stable." *Motion to*

*Supplement*, p. 1. More specifically, the Joint Report, dated October

2, 2008, states:

> The resistograph tests indicate solid trunk wood. The tests
> show a slight change in density at the center of the trunk
> but it does have the appearance of a decay pocket. In my
> opinion failure caused by decay or other structural weakness
> of the trunk is unlikely. The old wound on the east side of
> the trunk has what appears like a dry rot that only
> penetrates two inches into the trunk. In my opinion the old
> wound is not a serious threat to failure of the tree now but
> the tree should be tested again in two years.

Joint Report.

The City opposes the *Motion to Supplement* for three reasons.

*Defendant City of Upper Arlington's Response in Opposition to*

---

[6]A resistograph

is a mechanical drill system that measures the relative resistance
(drilling torque) of the material as a rotating drill bit is
driven into the wood at a constant speed. It produces a chart
showing the relative resistance profile for each drill path.
Because it can reveal the relative density change along the drill
path, it is typically used to diagnose the internal condition of
structural timbers.

Robert J. Ross, Brian K. Brashaw, Xiping Wang, *Structural Condition Assessment of In-Service Wood*, 56 FOREST PRODUCTS JOURNAL 4, 5 (2006).

*Plaintiff's Motion to Supplement the Record* ("*Response*"), Doc. No. 18.
The City argues that the Joint Report is hearsay inadmissible in
connection with the evidentiary hearing, has not been properly
authenticated pursuant to Fed. R. Evid. 901, *Id.* at 3, and fails to
comply with the requirements of Fed. R. Evid. 702 and 703 and Fed. R.
Civ. P. 26(a)(2)(b) regarding expert opinions. *Id.* at 1, 4-5.

In reply, plaintiff argues that the exigencies of his motion
warrant departure from the standards of Rule 26(a) and the Rules of
Evidence. *Plaintiff's Reply to Defendant's Response to Plaintiff's
Motion to Supplement the Record* ("*Reply*"), Doc. No. 19, pp. 1 (citing
*Univ. of Texas v. Comensich*, 451 U.S. 390, 395 (1981); *Kos Pharm. v.
Andrx Corp.*, 369 F.3d 700, 718-19 (3d Cir. 2004); and 11A C. Wright &
A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2949).

## B.   Discussion

Given the limited purpose of preserving the status quo until a
trial on the merits, "'a preliminary injunction is customarily granted
on the basis of procedures that are less formal and evidence that is
less complete than in a trial on the merits.'" *Certified Restoration
Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th
Cir. 2007) (quoting *Camenisch*, 451 U.S. at 395). The United States
Court of Appeals for the Sixth Circuit has not explicitly stated
whether hearsay evidence may be considered in the context of a
preliminary injunction hearing. *In re De Lorean Motor Co.*, 755 F.2d
1223, 1230 n.4 (6th Cir. 1985) ("The parties assume that the Federal
Rules of Evidence are fully applicable to a hearing on a motion for
preliminary injunction. We express no opinion on this question. *But*

*see* 11A C. Wright & A. Miller, Federal Practice and Procedure § 2949 (1973) (affidavits may be used to support preliminary injunction; 'trial court should be allowed to give even inadmissible evidence some weight')"). However, this Court and other district courts within this circuit have considered, in connection with motions for preliminary injunction, evidence that would ordinarily be inadmissible. *See*, *e.g.*, *United States v. O'Brien*, 836 F. Supp. 438, 441 (S.D. Ohio 1993) (Beckwith, J.); *Family Trust Found., Inc. v. Wolnitzek*, 345 F. Supp. 2d 672, 699 n.10 (E.D. Ky. 2004); *Performance Abatement Servs. v. Lansing Bd. of Water & Light*, 2001 U.S. Dist. LEXIS 2891, *5, Case No. 5-98-CV-70 (W.D. Mich. Mar. 6, 2001); *Toledo Area AFL-CIO Council v. Pizza*, 898 F. Supp. 554, 558-59 (N.D. Ohio 1995). *See also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004); *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

The *Motion to Supplement* is **GRANTED**.

## III. *MOTION TO DISMISS*

### A.   Applicable Standards

### 1. Rule 12(b)(1)

The City moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), challenging the Court's subject matter jurisdiction. Where such a motion is filed, the

> plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn*, 532 F.2d 554, 560 (6th Cir. 1976). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

*Ferrero v. Henderson*, 244 F. Supp.2d 821, 826 (S.D. Ohio 2002) (Rice, J.).

### 2. Rule 12(b)(6)

The City also moves to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6), contending that the *Complaint* fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983); *Carter v. Welles-Bowen Realty, Inc.*, 493 F. Supp. 2d 921, 923 (S.D. Ohio 2007). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio

1994). Recently, the Supreme Court of the United States explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. at 1965. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

Additionally, as a general rule "matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). A certain amount of flexibility attends the determination of whether a matter falls "outside the pleading[s]." *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001). In addition, the United States Court of Appeals for the Sixth Circuit has "taken a liberal view of what falls within the pleadings for purposes of Rule 12(b)(6)." *Id*. Hence, documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *Weiner*, 108 F.3d at 89; *McGee v. Simon & Schuster Inc.*, 154 F. Supp.2d 1308, 1311 n.3 (S.D. Ohio 2001). If extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445

(6th Cir. 1997); *see also Delahunt v. Cytodyne Tech.*, 241 F. Supp.2d 827, 831-32 (S.D. Ohio 2003).

Here, both plaintiff and the City attach documents in support of their pending motions. Specifically, the parties attach copies of correspondence relating to the City's decision to remove the Tree and plaintiff's appeal of that decision. Defendant also presented minutes of the meetings of the Tree Commission. These documents (or the content of these documents) are referred to in the *Complaint*. *See Complaint*, ¶¶ 13, 14, 15, 21, 22, 23, 24, 25 and 26. Thus, the Court concludes that the documents attached to the memoranda of the plaintiff and the City (and the Tree Commission minutes) will be considered part of the pleadings, which the Court will consider without converting the City's motion into a motion for summary judgment. *See Yeary*, 107 F.3d at 445.

**B.    Discussion**

**1.    Standing**

**a.    Arguments of the parties**

The City first argues that plaintiff lacks standing because he has not, and will not, suffer a concrete and actual injury if the Tree is removed. *Motion to Dismiss*, pp. 4-8. More specifically, the City contends that plaintiff lacks a protected property interest in the Tree because Ohio law "does not recognize Plaintiff's asserted interest in the Tree when the Tree and the property on which it sits belong to the City." *Id*. at 5 (*Columbus Gaslight & Coke v. Columbus*, 50 Ohio St. 65, 69 (1893)); citing *Ramsey v. City of Gahanna*, No. 90AP-284, 1990 WL 204981, at *2 (10th Dist. Ct. App. Dec. 11, 1990).

In response, plaintiff argues that the City mischaracterizes Ohio law and that *Gaslight* "recognized that abutting landowners have *some* interest in the trees on the right-of-way." *Plaintiff's Response to Defendant's Motion to Dismiss and Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction*, Doc. No. 15 ("*Plaintiff's Response*"), pp. 7-8 (emphasis in original).[7] Plaintiff claims both standing and a property interest in the Tree. *Id.*

**b. Standard**

The party invoking federal jurisdiction must have standing, *i.e.,* a "personal stake in the outcome of the action[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962). To establish a personal stake in the outcome, the plaintiff must allege "an injury in fact." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). Such an injury is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or hypothetical[.]'" *Id.* (internal citations omitted). In addition, "there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Finally,

---

[7]Plaintiff also relies on cases from jurisdictions outside Ohio. *See*, *e.g.*, *Plaintiff's Response*, 8-10 (citing *Bushong v. Wyomissing Borough*, 8 Berks 47, 1916 WL 3766 (Pa. Com. Pl. 1916); *Town of Durant v. Castleberry*, 106 Miss. 699, 64 So. 657, 657 (1914); *Paola v. Wentz*, 79 Kan. 148, 98 P. 775 (1908)); *Motion for Preliminary Injunction*, pp. 3-4 (same). However, this Court will look only to the law of Ohio in determining whether plaintiff is vested with a legally protected property right.

it must be "likely" that a decision in the plaintiff's favor will redress the injury. *Id.*

### c. Ohio law

Plaintiff claims standing based on a property right assertedly conferred by Ohio law. In *Ramsey*, the plaintiffs, owners of residential real estate, purchased two pear trees and planted them in the treelawn between the sidewalk and street in front of their home. *Ramsey*, 1990 WL 204981, at *1. Defendant City of Gahanna removed the trees to improve visibility of a newly-installed stop sign. *Id.* The city later replanted the trees at the Gahanna Golf Course. *Id.* Plaintiffs sued, seeking compensation for the value of the two trees. *Id.* The Ohio Court of Appeals for the Tenth District ultimately concluded that plaintiffs were entitled to compensation regardless of ownership of the treelawn:

> A taking also occurs if the trees were on property owned by the municipality. It is well-established that a property owner whose property abuts a public street has a limited, qualified property interest in the adjacent street. *Rowe v. Cincinnati* (1927), 117 Ohio St. 382, 387. "Under some circumstances, trees growing in the street in front of his lot are his property, and he may maintain them, subject only to the free use of the street by the public." *Gas Light* [sic] *& Coke v. Columbus* (1893), 50 Ohio St. 65, 69. Plaintiff was not required to rely on this qualified property right as the trial court also determined that the trees were planted with defendant's express consent. This finding was based on the plaintiffs' uncontroverted affidavits. Therefore, it is clear that the trees were plaintiffs' property and that they were lawfully planted in the treelawn even if that property was within the boundaries of the city street.

*Id.* at *2.

In *Rowe*, the plaintiff, owner of two gasoline pumps erected on a public sidewalk, requested an injunction to restrain defendants, the

14

City of Cincinnati and several city executives, from enforcing a city
ordinance that required the removal of gasoline pumps maintained and
operated on public sidewalks. *Rowe*, 117 Ohio St. at 383-84. The
plaintiff argued that, under Ohio law, "the abutting owner has a
property right in the street incident to his ownership of the abutting
real estate, which entitles him to use the sidewalk spaces of his
premises for his own business purposes." *Id*. at 386-87 (citations
omitted). The Ohio Supreme Court recognized "a certain limited,
qualified property in the public street which inheres in the ownership
of abutting real property." *Id*. at 387. However, on the facts
presented in *Rowe*, the Supreme Court concluded that "[a]n abutting
owner does not have such right of property in the public streets as to
give him the right to appropriate a portion of the street permanently
to the purposes of his private business." *Id*. at 388.

Finally, in *Gaslight*, the plaintiff, a utility, held an easement
in the streets and alleys of the defendant City of Columbus.
*Gaslight*, 50 Ohio St. at 65. Pursuant to this easement, plaintiff had
the right to lay and maintain its pipes in the city's public streets
and alleys. *Id*. Plaintiff sought compensation for damage to its
pipes caused by the city's modification of the street level, arguing
that its easement "is a right as substantial as that of an abutting
owner[.]" *Id*. at 69. The Ohio Supreme Court, distinguishing the
rights of an easement holder from those of the owner of abutting
property, commented:

> By reason of owning the abutting land, [the latter] has a
> property right in the street itself, as much property as his
> lot. Under some circumstances, trees growing in the street
> in front of his lot are his property, and he may maintain
> them there, subject only to the free use of the street by

15

the public.

*Id.*

None of these cases addresses the precise issue presented in the case *sub judice*. *Rowe* considered, and rejected, the right of an abutting owner to permanently appropriate part of the street for private business. *Gaslight's* discussion of the rights of an abutting property owner was, technically, *dictum*. *Ramsey*, although a closer case, was based in the final analysis on the plaintiffs' undisputed ownership of the trees at issue. The plaintiff in this case, an abutting property owner, did not purchase or plant the Tree, which stands on property owned by the City.

As this summary suggests, Ohio law is not at all clear on the rights of an abutting property owner in a tree not owned or planted by him and which is located on property owned by a city. Nevertheless, the Court will assume, without deciding, that plaintiff is vested with a property interest in the Tree and that removal of the Tree constitutes an invasion of plaintiff's legally protected interest. *Cf. Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (noting that "the standing requirement of an injury-in-fact is fairly lenient and may include a wide variety of economic, aesthetic, environmental, and other harms"). The parties do not dispute that there exists a causal connection between plaintiff's claimed injury and the City's proposed action or that plaintiff's injury could be redressed by a decision favorable to him. *See Lujan*, 504 U.S. at 561. The Court therefore concludes that plaintiff has standing to assert his claims. Accordingly, as it relates to the City's request to dismiss the *Complaint* for lack of standing, the *Motion to Dismiss* is

16

without merit.

## 2.   Substantive Due Process

Plaintiff contends that "removal of the tree is not rationally related to any legitimate governmental interest" and that the proposed removal of the tree "violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983." *Complaint*, ¶¶ 31-32.  More specifically, plaintiff argues that his expert, and the fact that the Tree withstood a recent windstorm, establish that the Tree "is healthy, stable and sound"; in proposing to remove the Tree, plaintiff argues, "the City is acting irrationally, arbitrarily and capriciously in violation of Substantive Due Process."[8]  *Plaintiff's Response*, pp. 10-12.

For its part, the City contends that plaintiff cannot demonstrate "that his rights to the Tree have been deprived through arbitrary and capricious action."  *Defendant City of Upper Arlington's Reply in Support of Motion to Dismiss*, Doc. No. 17 ("*Reply*"), pp. 5-7.  The City specifically argues that plaintiff cannot establish the arbitrary action necessary to a substantive due process claim because a certified arborist has concluded that a legitimate interest of the City, *i.e.,* public safety, is served by the removal of the Tree.  *Id.* at 6-7.

The City's arguments are well-taken.  The Fourteenth Amendment guarantees protection to individuals against arbitrary action by the government.  *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  However, "only the most egregious official conduct can be said to be 'arbitrary

---

[8]Plaintiff expressly disavows a procedural due process claim.  *See Plaintiff's Response*, pp. 10-12; *Motion to Dismiss*, pp. 8-10.

in the constitutional sense.'" *Id.* at 845 (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). "[T]he cognizable level of executive abuse of power is that which shocks the conscience." *Id.* Plaintiff has not shown such an abuse of power.

That the Tree has been damaged is not disputed. The City produced evidence that at least one certified arborist, Mr. Cothrel, examined the Tree and determined that the Tree is diseased and must be removed because it poses a threat to public safety. *See*, *e.g.*, Exhibits 1 and 2, attached to *Complaint*; Exhibit B, attached to *Motion to Dismiss*; Exhibits G, J and K, presented during the evidentiary hearing. In response, plaintiff presents evidence from other arborists who opine that the Tree is "structurally stable" and that "the old wound is not a serious threat to the failure of the [T]ree." Exhibit 3, attached to the *Complaint*; Joint Report. Even conceding this point, however, plaintiff's evidence fails to "shock the conscience" or establish that the City has abused its power in a constitutional sense. Instead, the City's reliance on Mr. Cothrel's professional assessment establishes that the City's decision to remove the Tree was neither egregious nor arbitrary; the decision to remove from city property a damaged tree located near a busy street close to a school and which a certified arborist has determined to be diseased is rationally related to public safety. This is so, moreover, even though Mr. Cothrel's opinion differs from the assessments of plaintiffs' experts. As even plaintiff acknowledged, in his letter to Mr. Cothrel, "[t]rue professionals recognize that there is room for reasonable, professional disagreement." Exhibit C, attached to *Motion to Dismiss*. The Court is aware of no authority holding that it shocks

the conscience for a city to remove a tree located on its own property after a certified arborist has determined that the tree poses a threat to public safety.[9]

In addition, even the most expansive view of Ohio law recognizes in plaintiff only a qualified interest in the Tree, "subject to the [C]ity's right to maintain the street. In exercising its power to remove trees planted in streets and alleys, a municipality is presumed to act in good faith. A court may not question such a decision absent bad faith or abuse of discretion[.]" *Ramsey*, 1990 WL 204981, at *3. As discussed *supra*, plaintiff has failed to establish that the City has abused its discretion or has acted in bad faith in determining to remove the Tree. Accordingly, as it relates to plaintiff's substantive due process claim, the *Motion to Dismiss* is **GRANTED**.

### 3. Equal Protection

Plaintiff also alleges that the City's proposed removal of the Tree violates the Equal Protection Clause of the Fourteenth Amendment. *See Complaint*, ¶¶ 31-32; *Plaintiff's Response*, p. 12. Specifically, plaintiff argues that "trees in Upper Arlington that were and remain in worse condition than the tree in question in terms of health, condition, stability and soundness, were and are allowed to stand. They have not been removed and have not been threatened with removal." *Plaintiff's Response*, p. 12.

The City characterizes plaintiff's equal protection claim as a

---

[9]Plaintiff's offer to monitor the tree and/or to accept liability if the Tree should fail and cause injury does not require a different conclusion. The City does not act so arbitrarily as to shock the conscience merely because it declines to entrust to a willing private citizen the City's paramount obligation to protect the public.

"class-of-one" claim, which cannot prevail where state action involves discretionary decision-making. *Reply*, pp. 7-12 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Engquist v. Oregon Dep't of Agric.*, _ U.S. _, 128 S. Ct. 2146, 2151 (2008)). Plaintiff denies that *Engquist* bars a class of one equal protection claim where discretionary decision-making is involved, arguing that *Engquist* is distinguishable and "by its express terms only applies to public-sector employment and not governmental regulation or land-use decisions." *Plaintiff's Response*, pp. 12-13 n.10.

The City also argues that plaintiff fails to allege that he has been treated differently or that city ordinances have been applied differently to him than to other similarly situated individuals. *Reply*, pp. 8-9. Finally, the City contends that it has a rational basis for removing the Tree: the Tree is decayed/dying or unsound and the City will be responsible for any damage or injury caused by the Tree. *Id.* at 9.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Supreme Court of the United States has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (recognizing a class of one equal protection

20

claim in the context of a dispute regarding a zoning ordinance). *See also Trihealth, Inc. v. Bd. of Comm'rs*, *Hamilton County, Ohio,* 430 F.3d 783, 788 (6th Cir. 2005) ("To prevail, [plaintiffs] must demonstrate that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the County's actions were irrational.").

Here, plaintiff has failed to establish that he has been treated differently than others similarly situated or that city ordinances have been applied differently to him than to others similarly situated. As an initial matter, plaintiff has not shown that there are, in fact, others similarly situated to him. Plaintiff argues generally that there are trees "in worse condition than the tree in question" that have not been marked for removal. *Plaintiff's Response*, p. 12. Plaintiff has also proffered photographs of other trees in the neighborhood that allegedly suffered damage in a recent windstorm. *See* Exhibits 4-23, presented during the evidentiary hearing. However, plaintiff offers no expert evidence that these trees are in "worse condition" than the Tree, nor has he established that the City does not propose to take remedial action with respect to those trees. Plaintiff simply has not shown that he has been treated differently than others similarly situated to him.

In any event, as the Court concluded *supra,* the City did not act arbitrarily when it proposed to remove the Tree. The City relied on the analysis and opinion of a certified arborist, Mr. Cothrel, and articulated at least one basis, *i.e.,* public safety, justifying the removal of the Tree. Under these circumstances, the Court cannot

conclude that the City's actions were irrational.  Accordingly, as it relates to plaintiff's equal protection claim, the *Motion to Dismiss* is **GRANTED**.[10]

### 4.    Upper Arlington Ordinances §§ 907.03(B) and 907.04(A)

Plaintiff also asserts a claim based on the City's ordinances. *See Complaint*, ¶¶ 33-35 (alleging that the City's removal of the Tree "contradicts" City Ordinance § 907.04(A)).  Because the Court has dismissed plaintiff's federal claims, the Court **DISMISSES without prejudice** plaintiff's remaining state law claim.  *See* 28 USCS § 1367(c); *Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000).

## IV.  *MOTION FOR PRELIMINARY INJUNCTION*

Because the Court concludes that the City's *Motion to Dismiss* is meritorious, the Court denies plaintiff's request for injunctive relief because plaintiff cannot demonstrate a substantial likelihood of success on the merits.  *See, e.g., Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (A "finding that there is simply no likelihood of success on the merits is usually fatal.").

**WHEREUPON** *Plaintiff's Motion to Supplement the Record*, Doc. No. 16, is **GRANTED.**  *Defendant City of Upper Arlington's Motion to Dismiss and Memorandum in Opposition to Plaintiff Mark Brown's Motion for Preliminary Injunction*, Doc. No. 11, is **GRANTED** and *Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction*, Doc. No.

---

[10]The parties disagree on the scope of *Enquist's* recognition of a class of one equal protection claim.  However, having determined that, in any event, plaintiff has failed to state an equal protection claim, the Court need not resolve whether *Enquist* forecloses plaintiff's claim under the facts of this case.

4, is **DENIED**.

Plaintiff's claims based on federal law are **DISMISSED** with prejudice; plaintiff's claim based on state law is **DISMISSED** without prejudice.

The Clerk shall enter **FINAL JUDGMENT** in this case.

October 28, 2008                    <u>    *s/Norah McCann King*    </u>
                                       Norah M<sup>c</sup>Cann King
                                   United States Magistrate Judge