IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARK BROWN,**

       **Plaintiff,**

  vs.                                                  Civil Action 2:08-CV-849
                                                              Magistrate Judge King

**CITY OF UPPER ARLINGTON,**

       **Defendant**

## OPINION AND ORDER

Plaintiff, a homeowner residing in Upper Arlington, Ohio, filed this action in state court seeking to enjoin the City of Upper Arlington ["the City"] from removing a sweet gum tree growing on the City's property abutting plaintiff's property ["the Tree"]. A temporary restraining order prohibiting the removal of the Tree was granted while the action was pending in state court. Exhibit No. C, attached to *Notice of Removal*, Doc. No. 2. The action was thereafter removed to this Court as one arising under the laws of the United States with a supplemental state law claim over which the Court has jurisdiction under 28 U.S.C. §1367. *Notice of Removal.* Plaintiff filed a motion for a temporary restraining order and preliminary injunction, Doc. No. 4, and the City filed a motion to dismiss, Doc. No. 11.

On October 29, 2008, and after an evidentiary hearing, the Court concluded that, as it relates to plaintiff's federal claims, the City's motion to dismiss was meritorious. *Opinion and Order*, Doc. No. 20. The Court therefore denied with prejudice plaintiff's federal claims and denied without prejudice plaintiff's state law claim. The Court also denied plaintiff's motion for interim injunctive relief. *Id.* Final

judgment was entered that same date. *Judgment,* Doc. No. 21. This matter is now before the Court on *Plaintiff's Motion for Contempt,* Doc. No. 22, and *Motion for Rehearing,* Doc. No. 23. Both of plaintiff's motions relate to the City's removal of the Tree, over plaintiff's protests, on the day after judgment was entered in this case.

**Background**

The *Verified Complaint* alleged that the removal of the Tree would violate plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983. *Verified Complaint,* ¶¶30-35, Doc. No. 3. Plaintiff specifically alleged that his rights to substantive due process and equal protection would be denied were the Tree removed. *Plaintiff's Response to Defendant's Motion to Dismiss and Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction,* at p.4, Doc. No. 15. Plaintiff also asserted a claim under the city ordinances of Upper Arlington, City Ordinance §907.04(A). *Verified Complaint,* ¶¶30-35.

In its *Opinion and Order* of October 29, 2008, this Court rejected the City's challenge to plaintiff's standing and assumed, without deciding, that plaintiff is vested with a property interest in the Tree. *Opinion and Order,* p.16. However, the Court rejected plaintiff's substantive due process claim. The Court specifically reasoned that plaintiff could not establish the arbitrary action necessary to such a claim in light of the City's reliance on the opinion of its certified arborist, Steve Cothrel, who concluded that the City's legitimate interest in public safety would be preserved by the removal

2

of the Tree. *Id.*, p. 17 (citing *Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).

> That the Tree has been damaged is not disputed. The City produced evidence that at least one certified arborist, Mr. Cothrel, examined the Tree and determined that the Tree is diseased and must be removed because it poses a threat to public safety. *See*, *e.g.*, Exhibits 1 and 2, attached to *Complaint*; Exhibit B, attached to *Motion to Dismiss*; Exhibits G, J and K, presented during the evidentiary hearing. In response, plaintiff presents evidence from other arborists who opine that the Tree is "structurally stable" and that "the old wound is not a serious threat to the failure of the [T]ree." Exhibit 3, attached to the *Complaint*; Joint Report. Even conceding this point, however, plaintiff's evidence fails to "shock the conscience" or establish that the City has abused its power in a constitutional sense. Instead, the City's reliance on Mr. Cothrel's professional assessment establishes that the City's decision to remove the Tree was neither egregious nor arbitrary; the decision to remove from city property a damaged tree located near a busy street close to a school and which a certified arborist has determined to be diseased is rationally related to public safety. This is so, moreover, even though Mr. Cothrel's opinion differs from the assessments of plaintiffs' experts. As even plaintiff acknowledged, in his letter to Mr. Cothrel, "[t]rue professionals recognize that there is room for reasonable, professional disagreement." Exhibit C, attached to *Motion to Dismiss*. The Court is aware of no authority holding that it shocks the conscience for a city to remove a tree located on its own property after a certified arborist has determined that the tree poses a threat to public safety.

*Opinion and Order,* pp. 18-19 (footnote omitted).

This Court also rejected plaintiff's equal protection claim:

> Here, plaintiff has failed to establish that he has been treated differently than others similarly situated or that city ordinances have been applied differently to him than to others similarly situated. As an initial matter, plaintiff has not shown that there are, in fact, others similarly situated to him. Plaintiff argues generally that there are trees "in worse condition than the tree

3

> in question" that have not been marked for removal. *Plaintiff's Response*, p. 12. Plaintiff has also proffered photographs of other trees in the neighborhood that allegedly suffered damage in a recent windstorm. *See* Exhibits 4-23, presented during the evidentiary hearing. However, plaintiff offers no expert evidence that these trees are in "worse condition" than the Tree, nor has he established that the City does not propose to take remedial action with respect to those trees. Plaintiff simply has not shown that he has been treated differently than others similarly situated to him.

*Id.,* p.21. The Court therefore granted the City's motion to dismiss plaintiff's federal claims. *Id.* The Court dismissed without prejudice, however, plaintiff's remaining state law claim. *Id.*

It is apparently undisputed that, on October 30, 2008, *i.e.,* the day after the Court entered judgment dismissing all claims in this case, the City cut down the Tree. *See Declaration of Mark R. Brown,* ¶18, attached to *Motion for Contempt.* It is apparently also undisputed that plaintiff had, through counsel, previously advised the City that he intended to present, no later than Friday, October 31, 2008, his remaining state law claim to the state court, where he would again seek injunctive relief preventing the removal of the Tree. *See Declaration of Mark G. Kafantaris*, ¶2, attached to *Motion for Contempt.* Efforts to prevent the removal of the Tree on October 30, 2008, by plaintiff, personally and through his counsel, were unsuccessful.

**Plaintiff's Motions**

In his *Motion for Rehearing,* plaintiff, *inter alia,* proffers the removal of the Tree as a basis for this Court's reconsideration of the merits of his federal claims:

4

> Defendant's hasty removal of the tree under the circumstances presented here – which include ignoring Plaintiff's remaining state-law claims, his right to appeal, Plaintiff's repeated protests and Plaintiff's counsel's repeated phone calls – proves that the City acted in bad faith. It strongly suggests that the City's position in this case was not based on the health of the tree and the safety of children, but was based on a desire to be right. It proves that Mr. Cothrel's claim about the stability of the tree was not so much a professional judgment as a personal cover-up.

*Motion for Rehearing,* p.7. The Court remains convinced that plaintiff's federal claims were properly dismissed; nothing stated in plaintiff's *Motion for Rehearing* persuades the Court otherwise.

In his *Motion for Contempt,* plaintiff argues that the City's removal of the Tree should be sanctioned by a finding of contempt, both civil and criminal. A sanction for a civil contempt is remedial and is intended to accrue to the benefit of the complainant. *Gompers v. Buck Stove & Range Co.,* 221 U.S. 418, 441 (1911). "Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *United States v. Bayshore Associates, Inc.,* 934 F.2d 1391, 1400 (6th Cir. 1991) (citing *United States v. Mine Workers,* 330 U.S. 258, 303-04 (1947); *Gompers,* 221 U.S. at 441). Civil contempt proceedings are between the original parties, and are instituted and tried as part of the main cause.

By contrast, the purpose of criminal contempt is to punish the contemnor and to "vindicate the authority of the court." *Gompers,* at 441. Proceedings for criminal contempt are between the public, through appropriate prosecuting authorities, and the defendant; they are not part of the original cause. *Id.,* at 444-45.

Plaintiff argues that the City's removal of the Tree served to

5

undermine orderly judicial processes, including review of this Court's judgment by either this Court or the United States Court of Appeals for the Sixth Circuit, and denied plaintiff the opportunity to pursue injunctive relief in connection with his surviving state law claim. The City argues that, because this Court had entered a final judgment that imposed no legal obligation on it, and because the Court had issued no stay of its judgment, "this Court lacks the jurisdiction to enter any contempt charges against the City." *Defendant City of Upper Arlington's Response in Opposition to Plaintiff's Motion for Contempt,* p.3, Doc. No. 29. The City specifically takes the position that, absent a formal court order or actual pending litigation, it cannot be held in contempt.

As plaintiff recognizes, *Motion for Contempt,* p.1, the temporary restraining order imposed by the state court prior to the removal of this action had expired. Moreover, the City's offer, made at the end of the evidentiary hearing, to forebear action during the period of time that the matter was under this Court's consideration, lapsed upon the issuance of the Court's *Opinion and Order* on October 29, 2008. Thus, this Court's judgment imposed no explicit prohibition on the action by the City of which plaintiff now complains. *See* F.R. Civ. P. 62(a)(1) (final judgment in an action for an injunction is not stayed even if an appeal is taken, unless the court orders otherwise). *Cf.* F.R. Civ. P. 62© (trial court may, during the pendency of an appeal, suspend, modify, restore or grant an injunction "on terms for bond or on other terms that secure the opposing party's rights"). *See also* F.R. App. P. 8(a).

Plaintiff cites a number of cases in support of its *Motion for Contempt,* most of which are inapposite. For example, in *Merrimack River Savings Bank v. Clay Center,* 219 U.S. 527 (1911), which authorized a

6

finding of contempt, an appeal had actually been filed and the lower court had continued its injunction during the pendency of that appeal. In *Griffin v. County School Board of Prince Edward County, Virginia,* 363 F.2d 206 (4th Cir. 1966), which also authorized a finding of contempt, an appeal was pending although no injunction had been issued. Similarly, litigation was actually pending in *Lamb v. Cramer*, 285 U.S. 217 (1932), which also approved a finding of contempt. *Savoie v. Merchant Bank,* 84 F.3d 52 (2nd Cir. 1996), authorized a finding of contempt, even though no final judgment had been entered, in light of a magistrate judge's issuance of a report and recommendation. *But see Berry v. Mid-town Service Corp.,* 104 F.2d 107, 111 (2nd Cir. 1939) ("We believe it is the wiser policy to punish as contempt only the disobedience of some express command; ...").[1]

The Court is most persuaded, however, by *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991), in which the United States Supreme Court approved the assessment of sanctions, based on a court's inherent authority, against a party for, *inter alia,* transferring property prior to litigation despite notice of impending litigation seeking specific performance and injunctive relief prohibiting the alienation or incumbrance of the properties at issue. *Id.,* at 36.[2]

A court has "the inherent power to sanction a party when that

---

[1] Both parties have cited state court authority as well. *See, e.g., Scola v. Scola,* 59 N.E. 2nd 773 (Mass. 1945); *Evans v. State,* 24 S.E. 2nd 861 (Ga. App. 1943). Because this matter is governed by federal law, *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 52-55 (1991), the Court will not consider these state authorities.

[2] The court assessed sanctions pursuant to its inherent authority for not only the pre-litigation misconduct of the party but also in connection with misconduct by the party and the party's counsel throughout the course of the litigation and the appeal.

7

party exhibits bad faith[.]" *Youn v. Track, Inc.*, 324 F.3d 409, 420-21 (6th Cir. 2003) (citing, *inter alia*, *Chambers,* 501 U.S. at 43-50). "These powers come not from rule or statute but from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Stalley v. Methodist Healthcare*, 517 F.3d at 911, 920 (6th Cir. 2008)(quoting *Chambers,* 501 U.S. at 43). "Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure. . . the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th. Cir. 2002). "[T]he court ordinarily should rely on the Rules rather than the inherent power[;] [b]ut if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.*

However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Most importantly, the "imposition of inherent power sanctions requires a finding of bad faith," *Youn*, 324 F.3d at 420-21 (quoting *First Bank of Marietta*, 307 F.3d at 513), or conduct "tantamount to bad faith." *Id.*

In *Chambers*, the United States Supreme Court considered some general contours of the concept of bad faith:

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering

8

enforcement of a court order."

*Id.*, 501 U.S. at 45-46 (internal citations omitted). By way of contrast, mere mistake "would not meet the requirements for sanctions." *See Mann v. Univ. of Cincinnati*, 114 F.3d 1188, 1997 WL 280188, at *5 (6th Cir. 1997) (citing *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.*, 858 F.2d 317, 322 (6th Cir. 1988)).

In this case, the City -- knowing that plaintiff intended to continue to pursue his claim in state court -- nevertheless intentionally destroyed the Tree the preservation of which was the subject of the litigation. Although this Court remains convinced that plaintiff's federal claims were properly dismissed, the fact remains that the City's actions foreclose to plaintiff the possibility of meaningful review by either this Court of the Court of Appeals of the judgment entered in this case or pursuit in any meaningful fashion of the state court claim preserved to plaintiff by this Court's judgment. The City's actions were taken intentionally and with full knowledge of the impact of its actions on plaintiff's ability to pursue his claims in this or another court. *Chambers* teaches that such conduct may be sanctioned by the inherent power of the Court and this Court concludes that such power is properly exercised in this case.

Plaintiff asks that the City "be taught to honor the justice system and the federal courts." *Motion for Contempt,* pp. 10-11. Secondarily, plaintiff asks for compensation such as replacement of the tree or some other form of compensation. "But that is left to the discretion of the Court." *Id.*, p. 11.

This Court concludes that an assessment of sanctions is

9

appropriate and that plaintiff is entitled to remediation and compensation for the loss of his legal options. The Court therefore **GRANTS** plaintiff's *Motion for Contempt*, Doc. No. 22, and orders the City to replace the Tree with one of comparable genus.[3] Moreover, the Court concludes that an award of plaintiff's attorney's fees associated with the *Motion for Contempt* is appropriate. Plaintiff is **DIRECTED** to provide the City with an itemized statement of attorney's fees and costs associated with the filing of the *Motion for Contempt*.

**WHEREUPON** plaintiff's *Motion for Rehearing*, Doc. No. 23, is **DENIED**; plaintiff's *Motion for Contempt*, Doc. No. 22, is **GRANTED** consistent with the foregoing.


September 28, 2009               *s/Norah McCann King*
                                    Norah McCann King
                              United States Magistrate Judge

---

[3]Plaintiff asks that the tree be replaced with a tree of "comparable age, size and genus." *Motion for Contempt,* p.18. The plaintiff does not suggest how a 40-year old tree may be successfully transplanted into an urban tree lawn.